**ROME LLP**
Eugene Rome (SBN 232780)
erome@romellp.com
Sridavi Ganesan (SBN 216129)
sganesan@romellp.com
Brianna Dahlberg (SBN 280711)
bdahlberg@romellp.com
2029 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 282-0690
Facsimile: (310) 282-0691

Attorneys for Defendants OPENTLD B.V.,
FREEDOM REGISTRY B.V., FINTAG GROUP
B.V., CERVESIA ACIDA BV, B.V. DOT TK,
CENTRAFRIQUE TLD B.V., EQUATORIAL
GUINEA DOMAINS B.V., MALI DILI B.V.,
GABON TLD B.V., STICHTING OPENTLD
WHOIS PROXY, YOURSAFE B.V., JOOST
ZUURBIER MANAGEMENT SERVICES B.V.,
and VTL MERCHANT SUPPORT, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

META PLATFORMS, INC.,
INSTAGRAM, LLC, and WHATSAPP LLC,

            Plaintiffs,

      v.

OPENTLD B.V., FREEDOM REGISTRY
B.V., FINTAG GROUP B.V., CERVESIA
ACIDA BV, B.V. DOT TK,
CENTRAFRIQUE TLD B.V., EQUATORIAL
GUINEA DOMAINS B.V., MALI DILI B.V.,
GABON TLD B.V., STICHTING OPENTLD
WHOIS PROXY, YOURSAFE B.V., JOOST
ZUURBIER MANAGEMENT SERVICES
B.V., VTL MERCHANT SUPPORT, INC.,
and JOHN DOES 1-20, INCLUSIVE

            Defendants.

Case No. 3:22-cv-07768-AMO

**DEFENDANTS OPENTLD B.V.,
FREEDOM REGISTRY B.V., FINTAG
GROUP B.V., CERVESIA ACIDA BV, B.V.
DOT TK, CENTRAFRIQUE TLD B.V.,
EQUATORIAL GUINEA DOMAINS B.V.,
MALI DILI B.V., GABON TLD B.V.,
STICHTIN OPENTLD WHOIS PROXY,
YOURSAFE B.V., AND JOOST
ZUURBIER MANAGEMENT SERVICES
B.V.'S NOTICE OF MOTION AND
MOTION TO DISMISS SECOND
AMENDED COMPLAINT PURSUANT
TO FRCP 12(b)(2) AND 12(b)(6);
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF**

Hearing Date: November 30, 2023
Time: 2:00 p.m.
Courtroom 10 – 19th Floor

Complaint Filed: December 8, 2022
Trial Date: None set

---

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on November 30, 2023 at 2:00 p.m. in Courtroom 10, 19th Floor, of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants OpenTLD B.V., Freedom Registry B.V., Fintag Group B.V., Cervesia Acida BV, B.V. Dot TK, Centrafrique TLD B.V., Equatorial Guinea Domains B.V., Mali Dili B.V., Gabon TLD B.V., Stichting OpenTLD WHOIS Proxy, Yoursafe B.V., and Joost Zuurbier Management Services B.V. (collectively, "Foreign Defendants") will and do hereby move the Court for an order dismissing the Second Amended Complaint ("SAC") of Plaintiffs Meta Platforms, Inc., Instagram, LLC, and WhatsApp LLC ("Plaintiffs") in its entirety pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

This Motion is made on the following grounds:

1.   The SAC should be dismissed as to the Foreign Defendants pursuant to Rule 12(b)(2) because this Court lacks personal jurisdiction over them.

2.   The SAC should be dismissed as to Fintag Group B.V., Cervesia Acida BV, Yoursafe B.V., and Joost Zuurbier Management Services B.V. pursuant to Rule 12(b)(6) because Plaintiffs have failed to allege facts to state a plausible claim upon which relief can be granted as to them.

This Motion is based upon this Notice, the supporting Memorandum of Points and Authorities, the Proposed Order filed herewith, the Declarations of Joost Zuurbier, Mirella Fetter, and Brianna Dahlberg filed herewith and exhibits thereto, all pleadings and papers filed in this action, the argument of counsel at the time of the hearing, and upon such other and further matters as the Court deems appropriate.

### STATEMENT OF ISSUES TO BE DECIDED

1.   Should the SAC be dismissed as to the Foreign Defendants under Rule 12(b)(2) for lack of personal jurisdiction?

2. Should the SAC be dismissed as to Fintag Group B.V., Cervesia Acida BV, Yoursafe B.V., and Joost Zuurbier Management Services B.V. under Rule 12(b)(6) because Plaintiffs have failed to allege sufficient facts to state plausible claims against them?

DATED: September 25, 2023                    **ROME LLP**

By: */s/ Eugene Rome*
    Eugene Rome
    Sridavi Ganesan
    Brianna Dahlberg

    Attorneys for Defendants,
    OPENTLD B.V., FREEDOM
    REGISTRY B.V., FINTAG GROUP B.V.,
    CERVESIA ACIDA BV, B.V. DOT TK,
    CENTRAFRIQUE TLD B.V.,
    EQUATORIAL GUINEA DOMAINS
    B.V., MALI DILI B.V., GABON TLD
    B.V., STICHTING OPENTLD WHOIS
    PROXY, YOURSAFE B.V., JOOST
    ZUURBIER MANAGEMENT
    SERVICES B.V., and VTL MERCHANT
    SUPPORT, INC.

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ *1*

II.    RELEVANT BACKGROUND ............................................................................ *2*

   A.   Background on Defendants .......................................................................... **2**

      1.   Freenom and its Affiliates .................................................................. 2

      2.   The Payment Business Entities ......................................................... 3

   B.   Procedural History ...................................................................................... **5**

   C.   Plaintiffs' Claims Against Defendants ....................................................... **6**

   D.   Plaintiffs' Personal Jurisdiction Allegations ............................................. **6**

III.   *THE COURT LACKS PERSONAL JURISDICTION OVER THE FOREIGN*

*DEFENDANTS* ...................................................................................................... *8*

   A.   Standard for Rule 12(b)(2) Motion ............................................................ **8**

   B.   The Foreign Defendants Are Not "At Home" in California for Purposes of General

   Jurisdiction .................................................................................................... **8**

   C.   The Court Lacks Specific Jurisdiction Over the Foreign Defendants ........ **9**

      1.   The Foreign Defendants Did Not Purposefully Direct Their Activities Towards

      California .................................................................................................. 9

      2.   The Claims Do Not Arise Out of California Activities by Foreign Defendants ............ 11

      3.   Exercising Personal Jurisdiction Would Be Unreasonable ............... 12

   D.   Plaintiffs Cannot Impute the Contacts of VTL to the Foreign Defendants ..................... **13**

IV.    *PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST FINTAG GROUP,*

*YOURSAFE, CERVESIA, OR JZMS* ..................................................................... *18*

   A.   Standard for Rule 12(b)(6) Motion ............................................................ **18**

1

B.    Plaintiffs Have Failed to Plead Sufficient Facts to Plausibly Allege Their Claims Against

Fintag Group, Yoursafe, Cervesia, or JZMS ........................................................................ **19**

*V.    CONCLUSION* ................................................................................................................. *21*

FOREIGN DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS SAC (FRCP 12(b)(2) & 12(b)(6))
Case No. 3:22-cv-07768-AMO

# TABLE OF AUTHORITIES

**Cases**

*AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020)....................................................... 10

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784 (9th Cir. 1977)........................................ 8

*Apple Inc. v. Allan & Assoc., Ltd.*, 445 F. Supp. 3d 42 (N.D. Cal. 2020)........................................ 15

*Arnold Fashion LP v. Celeb Sales Inc.*, 172 F.3d 875, 1999 WL 159723 (9th Cir. 1999) ............. 16

*Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102 (1987)............................................. 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................................. 19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 18, 19

*Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017) ............................................. 9, 11

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) .................................................................... 12

*Calder v. Jones*, 465 U.S. 783 (1984) ............................................................................................... 10

*Campanelli v. Image First Unif. Rental Serv., Inc.,* No. 15-CV-04456-PJH, 2016 WL 4729173
(N.D. Cal. Sept. 12, 2016).......................................................................................................... 14

*Core-Vent v. Nobel Indus. AB*, 11 F.3d 1482 (9th Cir. 1993) .................................................... 12, 13

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ........................................................... 8, 9, 13, 14

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) .................................................................... 13, 14

*Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003) .......................................................................... 13

*Femtometrix, Inc. v. Huang*, SACV-22-01624-CJC(KESx), 2023 WL 4317357
(C.D. Cal. Apr. 20, 2023)............................................................................................................ 14

*Gajo v. Chicago Brand*, Case No. 17-cv-00380-EMC, 2017 WL 2473142
(N.D. Cal. June 8, 2017).............................................................................................................. 20

*Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104 (C.D. Cal. 2015) ........................... 14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ........................................ 8

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003).............. 15

*Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1092 (9th Cir. 2023)................................ 10

*Iconlab Inc. v. Valeant Pharms. Int'l, Inc.*, No. 8:16-CV-01321-JLS-KES, 2017 WL 7240856
(C.D. Cal. Apr. 25, 2017)............................................................................................................ 14

*Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945) ......................................................................... 12

*Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580 (9th Cir. 2008)........................................................... 19

*Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218 (9th Cir. 2011) ........................................ 10

*Ministry of Def. of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764 (9th Cir. 1992) ...... 14

*Morrill v. Scott Fin. Corp.*, 873 F.3d 1136 (9th Cir. 2017) ............................................................ 10

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998)................................................ 8, 11

*Patterson v. Home Depot, USA, Inc.,* 684 F. Supp.2d 1170 (2010)................................................ 18

*Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015)............................................................ passim

*Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) ...................................... 10

*Sandoval v. Ali,* 34 F. Supp. 3d 1031 (N.D. Cal. 2014) ..................................................................... 14

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ............................... 8, 10

*SiteTools, Inc. v. Bansk Group LLC*, Case No. CV 22-8263-DMG (PVCx), 2023 WL 5505979

(July 14, 2023)........................................................................................................................... 10

*Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938 (2015) ........................................... 14

*Successor Agency to Former Emeryville Redevelopment Agency v. Swagelok Co.*,

364 F. Supp. 3d 1061 (N.D. Cal. 2019) ..................................................................................... 15

*Tran v. Farmers Grp., Inc.*, 104 Cal. App. 4th 1202 (2002)........................................................... 20

*United States v. Bestfoods*, 524 U.S. 51 (1998) ....................................................................... 13, 16

*Walden v. Fiore*, 571 U.S. 277 (2014) ............................................................................................ 11

*Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015 (9th Cir. 2017)........................................... 9, 13

**Statutes**

Cal. Civ. Proc. Code § 410.10 ............................................................................................................ 8

**Rules**

Fed. R. Civ. P. 8(a)(2) ...................................................................................................................... 19

Fed. R. Civ. P. 12(b)(2).............................................................................................................. 1, 8, 18

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 1, 18

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.      INTRODUCTION**

3       Defendants OpenTLD B.V. ("Freenom"), Freedom Registry B.V., Fintag Group B.V.

4  ("Fintag Group"), Cervesia Acida BV ("Cervesia"), B.V. Dot TK, Centrafrique TLD B.V.,

5  Equatorial Guinea Domains B.V., Mali Dili B.V., Gabon TLD B.V., Stichting OpenTLD WHOIS

6  Proxy ("ID Shield"), Yoursafe B.V. ("Yoursafe"), and Joost Zuurbier Management Services B.V.

7  ("JZMS") (collectively, the "Foreign Defendants") move to dismiss the Second Amended

8  Complaint ("SAC") (ECF No. 34) pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Rule

9  12(b)(2)") because this Court lacks personal jurisdiction over them.

10      Each of the Foreign Defendants is incorporated and based in the Netherlands. None of them

11  have any agents, representatives, or offices in California. In the case of Freenom and its affiliated

12  companies, their alleged conduct related to the alleged cybersquatting and trademark infringement

13  occurred outside of California and the United States. Plaintiffs have also indiscriminately named as

14  Defendants several entities related to a Dutch financial institution, Yoursafe, which happens to share

15  a common investor and two officers with Freenom, as well as the personal investment holding

16  company and management company of Freenom's Chief Executive Officer.

17      Plaintiffs allege that personal jurisdiction exists over each of the Foreign Defendants because

18  they are each an alter ego of Defendant VTL Merchant Support Inc. ("VTL"),[1] a Yoursafe subsidiary

19  incorporated in California. But Plaintiffs fall far short of meeting the high burden to establish that

20  each Foreign Defendant is an alter ego of VTL. Plaintiffs allege no other valid basis for personal

21  jurisdiction. Accordingly, the Foreign Defendants must be dismissed pursuant to Rule 12(b)(2).

22      In the alternative, the SAC must be dismissed as to Fintag Group, Yoursafe, Cervesia, and

23  JZMS pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) ("Rule 12(b)(6)") because

24  Plaintiffs have failed to state plausible claims against them. The SAC contains no allegations that

25  Fintag Group, Cervesia, Yoursafe, or JZMS registered, used, or trafficked in any infringing domain

26  names, or engaged in any other wrongful conduct. Plaintiffs have not alleged sufficient facts to state

27  ─────────────────────

[1] VTL is not a party to this Motion. VTL is concurrently filing its own separate Motion to Dismiss
28  pursuant to Rule 12(b)(6).

plausible claims against them based on alter ego, single enterprise, or direct participant theories of liability, either.

Accordingly, the Court should dismiss the SAC as to the Foreign Defendants.

## II.    RELEVANT BACKGROUND

### A.    Background on Defendants

#### 1.   *Freenom and its Affiliates*

Defendant Freenom is a Netherlands-based provider of internet domain name services founded in 2012. Decl. of Joost Zuurbier filed herewith ("Zuurbier Decl."), ¶¶ 3-4. Freenom is one of the world's largest domain name service providers with over 50 million domains registered over the last 20 years. *Id*. at ¶ 3.

Until recently, Freenom was the domain name registry service provider for five country code top level domains ("ccTLDs"): .cf for the Central African Republic; .ga for Gabon; .gq for Equatorial Guinea; .ml for Mali; and .tk for Tokelau. *Id*. at ¶ 4. Each of these ccTLDs was managed by a separate Freenom subsidiary: Dot TK for .tk; Dot CF for .cf; Doninio GQ for .gq; Mali Dili for .ml; and MY GA for .ga (collectively, the "ccTLD Service Providers"). *Id*. The ccTLD Service Providers provided internet domain registration services for domain names within their ccTLDs pursuant to agreements with the respective nations that own and control the ccTLDs. *Id*. at ¶ 5. Freenom's parent company is Freedom Registry B.V., a holding company. *Id*. ¶ 7.



Each of these entities (collectively, the "Freenom Entities") are Dutch companies with their

principal places of business located in Amsterdam. *Id*. at ¶¶ 3, 6-7. None of them have offices or employees located in the United States. *Id*. at ¶ 9.

Since Freenom's founding in 2012, a major aspect of its operating model was the offering of free country code domain name registrations to the internet community. *Id*. at ¶ 4. When a user of Freenom's services registered a country code domain, the domain was registered in Freenom's name or in the name of one of its holding or sister companies on behalf of the actual registrant, who nonetheless remains the licensee and user of the domain. SAC ¶ 130; Ex. 6, §§ 6.3, 7.1.

In addition to free domains, Freenom has also offered paid domain names for registration in generic top level domains ("gTLDs") such as .com, .org, .net or .info. Zuurbier Decl., ¶ 8; SAC ¶ 121. Freenom's affiliate ID Shield offers a privacy service to Freenom customers who register gTLD domains. Zuurbier Decl., ¶ 8. When a customer subscribes to ID Shield's services, ID Shield registers the customer's domain name in ID Shield's name and licenses the domain name back to the customer. SAC ¶ 163. As the domain name registrant, ID Shield's name and information, not the name and personal information of the customer, is listed in the public WHOIS record associated with the domain name. *Id*., Ex. 5, §§ 2.1-2.1.4 The domain is otherwise in the customer's control. *See Id*. at Ex. 5, §§ 3.1-3.4. ID Shield is a Dutch foundation organized under the law of the Netherlands with its principal place of business located in Amsterdam. Zuurbier Decl., ¶ 8.

### 2. *The Payment Business Entities*

Separate and independent from Freenom, Freenom's CEO Joost Zuurbier also founded a Netherlands-based payments business, Yoursafe B.V. ("Yoursafe").[2] Yoursafe is a Dutch financial institution registered with the Dutch Central Bank as an Electronic Money Institution ("*elektronischgeldinstelling*"). Decl. of Mirella Fetter filed herewith ("Fetter Decl."), ¶ 3. Yoursafe provides personal and business IBAN (International Bank Account Number) accounts, debit cards and payment processing solutions to individuals and companies. *Id*. Yoursafe solely provides financial products and services. *Id*. at ¶ 7. It is not a domain name registrar or registry. *Id*. Yoursafe

---

[2] Yoursafe previously did business under the name Bitsafe. Fetter Decl., ¶ 4. On March 1, 2023, the company changed its name because companies and individuals incorrectly assumed that the company was involved with cryptocurrency—which it is not. *Id*.

has operated in the Netherlands since 2000. *Id*. at ¶ 3. Yoursafe's principal place of business is located in Amsterdam. *Id*.

Yoursafe's parent company is Yoursafe Holding B.V. (which is not a party to this action). *Id*. at ¶ 5. Yoursafe Holding B.V. wholly owns a U.S-based subsidiary, Defendant VTL Merchant Support, Inc. ("VTL"). *Id*. ¶ 10.



VTL is a Delaware corporation. *Id*. It is in the business of providing financial support services to Yoursafe merchants (customer support services) and cardholders (end-user support services) in the United States pursuant to a contractual relationship between Yoursafe and VTL. *Id*. at ¶ 11. VTL does not and has never offered domain name services of any kind. *Id*. It is not affiliated with Freenom. *Id*.  Its business operations have no connection to the domain name business operated by Freenom. *Id*.

While Yoursafe and Freenom happen to share a common investor (Defendant Fintag Group) and two officers, Joost Zuurbier and Marcel Trik, the two respective business groups are separate and independent from one another. Fetter Decl., ¶ 7. Yoursafe, Yoursafe Holding B.V., and Fintag Group are separate corporate entities from one another and from the Freenom Entities. *Id*. at ¶ 8. Each company maintains its own corporate structure and officers, keeps its own books and records, and pays separate corporate registration fees and taxes in the Netherlands. *Id*. They do not comingle funds with each other, or with the Freenom Entities.  *Id*. They follow all corporate formalities required under Dutch law. *Id*.

Likewise, since VTL's business was founded in 2017, VTL has paid its own California and federal taxes and complied with corporate formalities required by Delaware law. *Id*. at ¶ 12.

**B.    Procedural History**

On December 8, 2022, Plaintiffs filed their original Complaint against Freenom, the ccTLD Service Providers, ID Shield, Bitsafe Payments B.V., VTL, and Does 1-20 alleging causes of action against the named Defendants for:

(1) Cybersquatting Under 15 U.S.C. § 1125(d);

(2) Trademark and Service Mark Infringement Under 15 U.S.C. § 1114;

(3) Trademark and Service Mark Infringement and False Designation of Origin Under 15 U.S.C. § 1125(a); and

(4) Dilution Under 15 U.S.C. § 1125(c).

ECF No. 1, ¶¶ 158-209. In short, Plaintiffs contend that Defendants are liable for over 5,000 infringing domain names that were selected and registered by users of Freenom's services. *See id.* at ¶ 3. The users who selected and registered the infringing domain names are sued as Doe Defendants. *Id.* at ¶ 30. In addition to the four causes of action against the named Defendants, Plaintiffs also alleged a claim for Violation of the Anti-Phishing Act under California Business and Professions Code section 22948 against the Doe Defendants only. *Id.* at ¶¶ 211-17.

At the time Plaintiffs filed their original Complaint, they filed motions to seal the case and for expedited discovery. ECF Nos. 2, 3. Plaintiffs further requested that if their sealing motion was denied, the "case not be opened and that the case initiating documents be returned unfiled per L.R. 79-5(g)(2)." ECF No. 2 at 5. Judge Haywood S. Gilliam denied both motions, and further denied Plaintiffs' alternative request to "unfile" the case. ECF No. 15 at 1-2.

On March 3, 2023, Plaintiffs filed their First Amended Complaint ("FAC"). ECF No. 20. In the FAC, Plaintiffs dropped Bitsafe Payments B.V. as a Defendant and added the following additional Dutch companies as Defendants: (1) Yoursafe; (2) its parent company, Fintag Group; (3) Cervesia, which is a personal investment holding company owned by Freenom CEO Joost Zuurbier; and (4) JZMS, which is a management company formed for the purpose of employing Mr. Zuurbier and paying employment taxes in the Netherlands based on his salary. *See id.*; Zuurbier Decl., ¶ 13. Neither Cervesia nor JZMS operate in the domain name industry. Zuurbier Decl., ¶ 14. The causes of action remained unchanged from the original Complaint. *Id.*

On April 28, 2023, Plaintiffs filed their operative SAC pursuant to a stipulation between Plaintiffs and VTL. ECF Nos. 32, 34. The parties and causes of action remain the same as the FAC. Plaintiffs represented to VTL and to the Court that further amendment was necessary to correct certain allegations in the FAC based on a mistranslation of a decision concerning Defendants issued by the Netherlands Commercial Court in Amsterdam, among other reasons. ECF No. 32, ¶ 5.

On May 10, 2023, this case was reassigned to Judge Martinez-Olguin. ECF No. 35.

### C.    Plaintiffs' Claims Against Defendants

In the operative SAC, Plaintiffs allege that Defendants, "individually, collectively and/or together as alter egos, as direct participants, and/or as agents of each other," registered, trafficked in, and used over 5,000 domain names that are identical or confusingly similar to Plaintiffs' trademarks. SAC ¶ 3. Notwithstanding the fact that the Freenom Entities are merely service providers and did not select or control the domain names at issue (*see* SAC, Ex. 6 & 13)—and that the other named Defendants had *no* alleged direct involvement at all in the purported infringement— Plaintiffs seek to hold all named Defendants liable for (1) Cybersquatting, (2) Trademark Infringement, (3) False Designation of Origin, and (4) Dilution.[3] Each of Plaintiffs' claims against Defendants are asserted under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

Plaintiffs are seeking recovery of Defendants' profits, actual damages, or alternatively, statutory damages under 15 U.S.C. 15 U.S.C. § 1117(d) in the amount of $100,000 per infringing domain name—*i.e.*, at least $500 million in statutory damages. *See* SAC ¶ 211. Plaintiffs are seeking to have these damages trebled under 15 U.S.C. § 1117. *Id*. Plaintiffs also seek injunctive relief, among other remedies. *Id*. at ¶ 275.

### D.    Plaintiffs' Personal Jurisdiction Allegations

Plaintiffs assert that personal jurisdiction exists over the Foreign Defendants based the following allegations:

---

[3] As in the prior versions of the Complaint, Plaintiffs also allege a fifth cause of action for Violation of the Anti-Phishing Act (Cal. Bus. & Prof. Code § 22948) against the Doe Defendants only. SAC ¶¶ 245-252.

- Each Defendant, "either by themselves or by virtue of being an alter ego of an/or direct participant in the conduct of the others, regularly conducts business in California and purposefully avails themselves of the privilege of conducting activities in this forum" (SAC ¶ 36);

- "Defendants have entered into one or more contracts with businesses in the United States in conjunction with their unlawful activity," including contracts between Freenom and the California-based Internet Corporation for Assigned Names and Numbers ("ICANN"), and at least one contract between Freenom and Meta (*id*.);

- Each Defendant, "either themselves or through one of their alter egos/direct participants, knowingly directed and targeted parts of their unlawful scheme at the United States," for example, by offering services in U.S. dollars or by virtue of the fact that the Defendants' websites are in English and accessible to U.S. consumers (*id*. at ¶ 37);

- Freenom filed a U.S. trademark application on September 3, 2013 for domain name registration and related services, and in that application, Mr. Zuurbier submitted a declaration attesting that at that time, Freenom had been providing these services in interstate commerce in the United States since at least March 1, 2013 (*id*. at ¶ 38);

- Plaintiffs allege, on information and belief, that Freenom was offering, and continues to offer, domain registration services in two or more states, including California (*id*.);

- Freenom officers Joost Zuurbier and Marcel Trik have incorporated other entities in the United States which are not named as Defendants (*id*. at ¶ 39); and

- Each Defendant is "part of a single enterprise and/or an alter ego" of other Defendants that have continuous and systematic contacts with California, including VTL (*id*. ¶ 40).

For the reasons below, these allegations are insufficient to establish personal jurisdiction over the Foreign Defendants.

III.   **THE COURT LACKS PERSONAL JURISDICTION OVER THE FOREIGN DEFENDANTS**

A.  **Standard for Rule 12(b)(2) Motion**

Plaintiffs bear the burden of establishing personal jurisdiction over the Foreign Defendants. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Where a motion to dismiss for lack of personal jurisdiction is based on written submissions rather than an evidentiary hearing, the plaintiff must make a prima facie showing of jurisdictional facts. *Ranza v. Nike, Inc*., 793 F.3d 1059, 1068 (9th Cir. 2015). While uncontroverted allegations must be taken as true, the plaintiff cannot "simply rest on the bare allegations of its complaint, but rather is obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc*., 551 F.2d 784, 787 (9th Cir. 1977).

Where, as here, there is no applicable federal statute governing personal jurisdiction, federal courts follow the law of the state in which the district court is located. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Under California's long-arm statute, personal jurisdiction may be asserted to the extent permitted by the Due Process Clause of the United States Constitution. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing Cal. Civ. Proc. Code § 410.10). Therefore, to determine whether there is personal jurisdiction over a defendant, courts inquire whether the exercise of jurisdiction "comports with the limits imposed by federal due process." *Ranza*, 793 F.3d at 1068 (quoting *Daimler*, 571 U.S. at 125). Courts undertake this analysis based on two types of personal jurisdiction, general and specific. *Id*. at 1068-69. Here, neither type of personal jurisdiction exists as to the Foreign Defendants.

B.  **The Foreign Defendants Are Not "At Home" in California for Purposes of General Jurisdiction**

To establish general personal jurisdiction, the Foreign Defendants' "affiliations with [California] [must be] so continuous and systematic as to render [them] essentially at home" in California. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted). The Supreme Court has cautioned that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there" and that for a

corporation, it is a place "in which the corporation is fairly regarded as at home. With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler*, 571 U.S. at 137 (internal citations and quotation marks omitted). Only in an "exceptional" case will "a corporation's operations in a forum other than its formal place of incorporation or principal place of business . . . be so substantial and of such a nature as to render the corporation at home in that State." *Id*. at 139 n19.

The Foreign Defendants are not "at home" in California for purposes of general jurisdiction. Plaintiffs concede that the Foreign Defendants are Dutch corporations with their principal places of business in the Netherlands. SAC ¶¶ 20-30. None of the Foreign Defendants have any offices in California, own or lease any real estate in California, have any employees or independent contractors in California, or hold any business license in California. Zuurbier Decl., ¶¶ 9, 14; Fetter Decl., ¶ 6. Furthermore, "the general jurisdiction inquiry examines a corporation's activities worldwide—not just the extent of its contacts in the forum state—to determine where it can be rightly considered at home." *Ranza*, 793 F.3d at 1070. Each of the Foreign Defendants' respective businesses are operated primarily in Europe. Zuurbier Decl., ¶ 9; Fetter Decl., ¶ 6. Accordingly, the Foreign Defendants are "at home" in the Netherlands for jurisdictional purposes, not in California.

**C. The Court Lacks Specific Jurisdiction Over the Foreign Defendants**

For the Court to exercise specific jurisdiction over the Foreign Defendants, "the suit must arise out of or relate to [the Foreign Defendants'] contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017) (internal quotation marks and brackets omitted). Three requirements must be met: (1) the defendant must have purposefully directed its activities or purposefully availed itself of the benefits afforded by the forum's laws; (2) the claim must arise out of or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice. *Williams v. Yamaha Motor Co. Ltd*., 851 F.3d 1015, 1023 (9th Cir. 2017). As shown below, Plaintiffs fail to meet these requirements.

*1. The Foreign Defendants Did Not Purposefully Direct Their Activities Towards California*

In trademark cases, the Ninth Circuit uses the "purposeful direction" analysis and the

9

"effects" test articulated in *Calder v. Jones*, 465 U.S. 783 (1984). *SiteTools, Inc. v. Bansk Group LLC*, Case No. CV 22-8263-DMG, (PVCx) 2023 WL 5505979, *5 (July 14, 2023); *see Schwarzenegger*, 374 F.3d at 802 (purposeful availment is most often used in suits sounding in contract, and purposeful direction in suits sounding in tort); *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019-20 (9th Cir. 2002) (intellectual property cases sound in tort). Plaintiffs must show that the Foreign Defendants "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1143 (9th Cir. 2017) (internal quotation omitted).

Plaintiffs cannot meet their burden. They allege no conduct by Freedom Registry, Fintag Group, Yoursafe, Cervesia, or JZMS that could constitute "an intentional act." Plaintiffs have sued these Defendants based on their status as owners and/or directors. Without an intentional act, Plaintiffs cannot satisfy the other two prongs for purposeful direction as to these Defendants.

As for the Freenom Entities, Plaintiffs cannot satisfy the second or third prongs.

*First*, the domain name services the Freenom Entities provided were not "expressly aimed" at California. Plaintiffs allege on information and belief that Freenom offered domain name registration services in California, and allege that Defendants' websites are in English and accessible to consumers within the United States. But when a defendant's website is the only jurisdictional contact, the court's "analysis turns on whether the site had a forum-specific focus or the defendant exhibited an intent to cultivate an audience in the forum." *Herbal Brands, Inc. v. Photoplaza, Inc*., 72 F.4th 1085, 1092 (9th Cir. 2023); *see Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1229-31 (9th Cir. 2011) (celebrity gossip website's content had a specific focus on California entertainment industry) & *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210 (9th Cir. 2020) (adult website "lack[ed]a forum-specific focus" because "the market for adult content is global").

Here, like in *AMA*, the market for the Freenom Entities' domain name services is global, not California-focused. None of the Freenom Entities have ever marketed or advertised specifically towards California. Zuurbier Decl., ¶ 9. Users with a California address make up less than 0.4% of Freenom's total user base. *Id*. at ¶ 10. And, unlike in *Herbal Brands*, 72 F.4th 1085, Plaintiffs do not allege that the Foreign Defendants caused any physical products to be delivered to California.

Plaintiffs' allegations that Freenom has entered into unspecified contracts with ICANN and Meta do not establish conduct "expressly aimed" at California, either. The "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Plaintiffs do not allege that Freenom performed any activities in California pursuant to these contracts.

Freenom's filing of a U.S. trademark application in 2013 does not establish "express aiming," either. Plaintiffs neglect to inform the Court that Freenom *abandoned* that application in 2014. Zuurbier Decl. ¶ 12 & Ex. A thereto. A ten-year-old abandoned trademark application is not evidence that Freenom specifically targeted the California or U.S. market.

<u>*Second*</u>, Plaintiffs cannot establish the third prong of purposeful direction—whether the conduct caused foreseeable harm in the forum state. The mere fact that Plaintiffs happen to be located in California is not sufficient, as "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. Moreover, the Freenom Entities did not target Plaintiffs, as they are not alleged to have selected any of the infringing domain names at issue and did not engage in any of the alleged phishing or abuse. It was the Doe Defendants who selected and used the domain names to engage in phishing; the Freenom Entities merely acted as service providers. *See* SAC ¶¶ 34, 246-51. And, to the extent Plaintiffs allege that the Freenom Entities themselves registered domains in their own names by virtue of their roles as service providers, "simply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another. . . there must be 'something more' to demonstrate that the defendant directed his activity toward the forum state." *Panavision*, 141 F.3d at 1322.

### 2. The Claims Do Not Arise Out of California Activities by Foreign Defendants

Moreover, Plaintiffs' claims do not "arise out of or relate to [the Foreign Defendants'] contacts with the forum." *Bristol-Myers Squibb Co. v. Superior C*ourt, 582 U.S. 255, 262 (2017) (internal quotation omitted). Plaintiffs do not allege that their claims arise out of or relate to any California activities by the Freenom Entities (or by any other Foreign Defendant, for that matter). Rather, Plaintiffs' claims arise from the Doe Defendants' selection, registration, and use of

infringing domain names for phishing and other abusive purposes. The Freenom Entities' provision of the domain name services related to the infringing domains occurred in the Netherlands, not in California. Plaintiffs' claims do not arise out of or relate to any alleged conduct by Foreign Defendants that took place in California.

### 3.   Exercising Personal Jurisdiction Would Be Unreasonable

Next, in evaluating the reasonableness of the exercise of jurisdiction, courts consider the burden on the defendant in defending in the forum, the interest of the forum state in adjudicating the dispute, the importance of the forum to the plaintiff's interest in obtaining convenient and effective relief, and considerations of judicial efficiency in adjudicating the case. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-477 (1985).

Where, as in this case, a defendant is a foreign company, the "unique burdens" on the defendant having to defend itself here should be given "significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 114 (1987). The concept of "fair play and substantial justice" inherent in Constitutional Due Process prevents a defendant from being unduly burdened by having to defend itself in a faraway and inconvenient forum. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 323-24 (1945); *see Core-Vent v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993).

It would be unreasonable to require the Foreign Defendants, as Dutch corporations, to defend themselves in a foreign nation's judicial system. *See Ashai*, 480 U.S. at 114. This is especially so since they have not purposefully interjected themselves into California. "[T]he smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." *Core-Vent*, 11 F.3d at 1488.

Litigation in California would be highly inefficient, given that the witnesses and evidence regarding Foreign Defendants' conduct are located in the Netherlands. *See Core-Vent*, 11 F.3d at 1489. In the parties' conference pursuant to Federal Rule of Civil Procedure 26(f), Plaintiffs' counsel has indicated that they are not amenable to holding depositions by video conference and they will seek to require Foreign Defendants' witnesses to travel to the United States from the

Netherlands, further adding to Foreign Defendants' burden. Decl. of Brianna Dahlberg filed herewith, ¶ 2.

In addition, there is a high bar to litigation against foreign parties in part because of the concerns regarding conflicts with sovereignties. *Core-Vent*, 11 F.3d at 149. Here, Plaintiffs' claims against Foreign Defendants concern their conduct in the Netherlands, and Freenom's contracts with its users contain forum selection and choice of law clauses specifying the Netherlands. SAC, Ex. 5 §§ 13.1-13.2, Ex. 6 § 14.6 & Ex. 13 § 25. The Netherlands has a far greater interest than California in regulating such contractual relationships and conduct that occurred within its borders.

The Courts of the Netherlands are perfectly available as an alternative for litigating any claims arising from any conduct of Foreign Defendants. *See Core-Vent*, 11 F.3d at 1490. Indeed, Plaintiffs incorporate and quote from an Amsterdam Court case at length in their SAC. SAC ¶¶ 65-78 & Ex. 16. It is Plaintiffs who bear the burden of proving that an alternative forum is unavailable. *See Core-Vent*, 11 F.3d at 1490.

Accordingly, all three requirements for specific personal jurisdiction are lacking.

### D.   Plaintiffs Cannot Impute the Contacts of VTL to the Foreign Defendants

Plaintiffs cannot establish personal jurisdiction over the Foreign Defendants by imputing the California contacts of VTL to them, either. "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). In limited circumstances, courts will allow the veil that separates affiliated entities to be pierced to impute liability from one entity to the other in order to avoid an injustice. *United States v. Bestfoods*, 524 U.S. 51, 62 (1998). Similarly, the veil separating affiliated entities may also be pierced in order to exercise personal jurisdiction over a foreign defendant in limited circumstances. *See Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)*, abrogated on other grounds by Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017).

While there previously was an "agency test" for personal jurisdiction, following the Supreme Court's opinion in *Daimler*, an agency relationship is no longer sufficient to impute one entity's forum contacts to another defendant entity. *Daimler*, 571 U.S. at 134-36; *Ranza*, 793 F.3d at 1071 (Supreme Court invalidates the "agency test"). In addition, a "single enterprise" theory, like the one

Plaintiffs have alleged in the SAC, cannot be used to establish personal jurisdiction. *See*, *e.g.*, *Campanelli v. Image First Unif. Rental Serv., Inc.*, No. 15-CV-04456-PJH, 2016 WL 4729173, at *7 (N.D. Cal. Sept. 12, 2016) (observing that "'single enterprise' and 'joint employer' theories are bases for liability, not tests for personal jurisdiction."); *Iconlab Inc. v. Valeant Pharms. Int'l, Inc.,* No. 8:16-CV-01321-JLS-KES, 2017 WL 7240856, at *6 (C.D. Cal. Apr. 25, 2017) ("Plaintiffs' other, exotic theories of imputing contacts—'single enterprise' 'aiding and abetting,' and 'ratification'—are not valid theories of establishing personal jurisdiction in the Ninth Circuit…").

Post-*Daimler*, to justify imputing one defendant's forum contacts to a foreign defendant, a plaintiff must demonstrate that the two defendants are "not really separate entities" under an "alter ego test." *Ranza*, 793 F.3d at 1071. Under this test[4] a "plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist; and (2) that failure to disregard their separate entities would result in fraud or injustice." *Id*. at 1073 (quoting *Unocal Corp.*, 248 F.3d at 926.) "The plaintiff must allege specific facts supporting both of the necessary elements." *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040-41 (N.D. Cal. 2014). "Conclusory allegations of alter ego status are insufficient to state a claim." *Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015). Here, Plaintiffs cannot meet either prong.

### 1.   *Fraud or Injustice*

Plaintiffs have failed to demonstrate that fraud or injustice would result if VTL's corporate form were not disregarded, as required by the second prong of the alter ego test. *See Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 956 (2015); *see also Successor Agency to Former Emeryville Redevelopment Agency v. Swagelok Co.*, 364 F. Supp. 3d 1061, 1082 (N.D. Cal.

---

[4] In federal-question cases such as this, district courts apply federal common law when determining whether to exercise personal jurisdiction over a party based on an alter ego theory. *Femtometrix, Inc. v. Huang*, SACV-22-01624-CJC(KESx), 2023 WL 4317357, at *5 (C.D. Cal. Apr. 20, 2023) (internal quotation marks omitted); *but see Ministry of Def. of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 769 n3 (9th Cir. 1992) (noting strong presumption that state law should be incorporated into federal common law where corporate law is at issue). Even if California law were to apply, however, the result would be the same, as the alter ego doctrine is substantially the same under federal and California law. *See id.*

2019) ("The second requirement for alter ego liability is that there must be 'an inequitable result if the acts in question are treated as those of the corporation alone.") (quotation marks and citation omitted). To satisfy this prong, Plaintiffs would need to show that the entity was formed to perpetrate a fraud or is being used for fraudulent purposes.

Here, Plaintiffs have not made a single allegation (factual or conclusory) that recognition of VTL's separate corporate existence would be promoting injustice or sanctioning a fraud. Without this allegation, Plaintiffs cannot establish their prima facie burden of alter ego between VTL and any of the Foreign Defendants. *See Apple Inc. v. Allan & Assoc., Ltd*., 445 F. Supp. 3d 42, 55-56 (N.D. Cal. 2020) ("The question thus becomes what fraud or injustice will result if the Court declines to find that Defendant A2 is an alter ego of Defendants Allan and/or AAL. Without an allegation addressing this question, Plaintiff has not met its prima facie burden as to Defendant A2.").

Moreover, it is unclear what "fraud" VTL's existence is perpetrating. VTL is not listed the domain registrant for any of the domains listed in Plaintiffs' exhibits. It is not even associated with the domain business, and it is not alleged to have engaged in any bad acts.

As such, Plaintiffs have not met the second prong of the alter ego test.

### 2. *Unity of Interest and Ownership*

Nor have Plaintiffs established the first prong of the alter ego test. The "unity of interest and ownership" prong of the alter ego test requires a showing that ***each*** of the Foreign Defendants control VTL "to such a degree as to render the latter the mere instrumentality of the former." *Ranza*, 793 F.3d at 1074. The mere existence of a parent-subsidiary relationship or an inter-related relationship between companies alone is not sufficient to confer personal jurisdiction over the foreign entities based upon the local entity's forum contacts. *Id*. There must be "pervasive control," such as when a parent corporation "dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Id*. Complete ownership, shared management personnel, and shared offices without more are insufficient to establish the requisite level of control. *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1135 (9th Cir. 2003).

Other relevant considerations include to determine unity of interest and ownership include:

> the commingling of funds and other assets; the failure to segregate funds of the individual and the corporation; the representation by an individual that he is personally liable for corporate debts; the failure to maintain adequate corporate minutes or records; the intermingling of the individual and corporate records; the domination or control of the corporation by the stockholders; the inadequacy of the corporation's capitalization; the use of the corporation as a mere conduit for an individual's business; and the disregard of formalities and the failure to maintain arm's-length transactions with the corporation.

*Arnold Fashion LP v. Celeb Sales Inc.*, 172 F.3d 875, 1999 WL 159723, at *3 n2 (9th Cir. 1999) (unpublished table decision).

The alter ego allegations in the SAC are insufficient to establish that VTL and any of the Foreign Defendants are not separate. Plaintiffs do not allege facts showing that any of the Foreign Defendants own VTL, that VTL has commingled funds with any of the Foreign Defendants, that VTL does not observe corporate formalities, that VTL does not keep its own books and records, that VTL is undercapitalized, that any of the Foreign Defendants control every facet of VTL's business, or that Foreign Defendants have represented that they are liable for VTL's debts. Moreover, the Declarations of Mr. Zuurbier and Ms. Fetter confirm that the Foreign Defendants and VTL are each separate corporations, and not alter egos. *See* Zuurbier Decl., ¶¶ 11, 14; Fetter Decl., ¶¶ 8, 12.

Per allegations in the SAC (and as evident by the chart found on p. 15 therein), the only connection between any of the Foreign Defendants and VTL are Mr. Zuurbier and Mr. Trik, who are officers of VTL and are officers/shareholders of some of the Foreign Defendants. *See* SAC ¶¶ 64, 111-20. But it is "entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *Bestfoods*, 524 U.S. at 69. "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Ranza*, 793 F.3d at 1073.

Plaintiffs also allege that VTL was the sole owner of Freenom **over 10 years ago**, but there are no factual allegations connecting Freenom to VTL within the time period Plaintiffs' claims arose, let alone any facts demonstrating that Freenom dictates every facet of VTL's business. *See* SAC ¶ 112. Plaintiffs further point to screenshots of webpages from two other entities associated

1    with Mr. Zuurbier, showing that the webpages appear similar. *Id*. at ¶¶ 119-20. But the fact that Mr.

2    Zuurbier uses the same website template for his businesses does not mean that they are alter egos of

3    one another; it simply means that he chose to be cost effective.

4           Plaintiffs try to make a tenuous connection between the Freenom and VTL by alleging that

5    Freenom operates as Freedom Registry, Inc., and that Freedom Registry, Inc. still operates in the

6    domain business, but now as VTL. *Id*. at ¶ 20, n9. However, there are two problems with these

7    allegations. The first is that they are conclusory; there are no factual allegations in the SAC showing

8    that Freenom has "pervasive control" over Freedom Registry, Inc. such that Freedom Registry, Inc.

9    is the alter ego of Freenom. The only factual connection between Freenom and Freedom Registry,

10   Inc. is that the latter is an affiliate of the former. *Id*. at ¶ 132. This is not sufficient to demonstrate

11   that Freedom Registry, Inc. is the alter ego of Freenom, or that Freenom does business as Freedom

12   Registry, Inc.

13          Second, other than the fact that Freedom Registry, Inc.'s name changed to VTL, Plaintiffs

14   allege no facts to support their claim that VTL is in the domain business. In fact, the opposite is true.

15   Indeed, Plaintiffs acknowledge the filings VTL submitted to the California Secretary of State show

16   that VTL is in the payment processing business. SAC ¶ 113. And as its name suggests, VTL

17   *Merchant Support*, Inc. provides payment processing support services to merchants and cardholders.

18   Fetter Decl., ¶ 11. Further, VTL's former website states that it is "a leading international Help Desk

19   Outsourcing service for both Enterprise and medium sized businesses." SAC at ¶ 118. There is

20   nothing to indicate that these services relate to the domain business.

21          In reality, the business of VTL is completely unrelated to Freedom Registry, Inc. VTL's

22   business was founded in 2017, when Mr. Zuurbier revived and repurposed an existing dormant

23   Delaware corporation, Freedom Registry, Inc., that his domain business previously owned but was

24   not using at that time. Fetter Decl., ¶ 12. Freedom Registry, Inc. had been incorporated in Delaware

25   in 2012 and operated until 2015, at which time the corporation became inoperative and void. *Id*. at

26   ¶ 12 & Ex. A. In 2017, Yoursafe's parent company, Yoursafe Holding B.V., purchased the

27   corporation and changed its name from Freedom Registry, Inc. to VTL. *Id*. at ¶ 12. VTL began

28   operating its payment processing business thereafter. *Id*. Since the 2017 corporate revivor, VTL has

paid its own California and federal taxes and complied with corporate formalities required by Delaware law. *Id*.

Plaintiffs refer to a declaration submitted by Mr. Zuubier in a prior arbitration that took place in 2015, in which he attested that domains registered with Freenom are transferred to one of Freenom's affiliates—Freedom Registry, Inc. or Freenom SARL—upon expiration. SAC ¶ 132. Plaintiffs point to the WHOIS directory listing for securityfacebook.tk as purported proof that Freenom is *still* transferring expired domains to Freedom Registry, Inc. *Id*. at ¶ 133. The listing shows Freedom Registry, Inc. as the domain registrant, with the same address as VTL in California. *Id*. Plaintiffs allege that Freenom did not update this listing because Freedom Registry, Inc. is now VTL. *Id*. at n21. However, it is unclear *when* the domain securityfacebook.tk expired, *i.e*., whether it was before or after Freedom Registry, Inc. became dormant in 2015.

Merely establishing that Freedom Registry, Inc. changed its name to VTL and that Mr. Zuubier and Mr. Trik are its officers is insufficient to justify disregarding VTL's separate corporate form. Plaintiffs must present facts to establish that each of the other Foreign Defendants "exercised substantially total control over the management and activities" of VTL. *Patterson v. Home Depot, USA, Inc.,* 684 F. Supp. 2d 1170, 1179 (2010). Given that VTL is not even in the same line of business as Freedom Registry, Inc., and that there are no facts alleged showing that Freedom Registry, Inc. and Freenom are one and the same, Plaintiffs have not met this rigorous test under the first prong.

For these reasons, Plaintiffs have failed to establish that personal jurisdiction exists over the Foreign Defendants based on an alter ego theory. Accordingly, the SAC should be dismissed as to the Foreign Defendants pursuant to Rule 12(b)(2).

## IV.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST FINTAG GROUP, YOURSAFE, CERVESIA, OR JZMS

### A. Standard for Rule 12(b)(6) Motion

In the alternative, the SAC should be dismissed as to Fintag Group, Yoursafe, Cervesia, and JZMS under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. A plaintiff must not merely allege conduct that is conceivable but must allege "enough facts to state a claim to

relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleadings standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a claim for relief will not do." *Twombly*, 550 U.S. at 555 (internal citation omitted).

**B.  Plaintiffs Have Failed to Plead Sufficient Facts to Plausibly Allege Their Claims Against Fintag Group, Yoursafe, Cervesia, or JZMS**

Plaintiffs' cybersquatting and trademark claims against Fintag Group, Yoursafe, Cervesia, and JZMS are premised entirely on indirect liability. The SAC does not allege that these Defendants themselves registered any infringing domain names, or otherwise engaged in any wrongful conduct underlying Plaintiffs' claims. None of the causes of action even specifically mention these Defendants, but instead allege that "Defendants" as a group "registered (as the registrant), used, or trafficked in" the infringing domain names with a bad faith intent to profit, or "used Plaintiffs' Trademarks in interstate commerce." SAC ¶¶ 196, 214, 225, 236. Because Plaintiffs have failed to allege any specific wrongful acts by Fintag Group, Yoursafe, Cervesia, or JZMS, they have failed to meet *Twombly's* plausibility standard.

To the extent Plaintiffs' claims against Fintag Group, Yoursafe, Cervesia, and JZMS are premised on alter ego, single enterprise, or direct participant liability, Plaintiffs have failed to allege sufficient facts to plausibly state their claims. The SAC alleges in a conclusory fashion that "Defendants are alter egos of one another and direct participants in each other's unlawful activities, all at the ultimate direction of Joost Zuurbier and Marcel Trik." SAC ¶ 62. They allege boilerplate alter ego factors on information and belief without reference to any specific Defendant. *Id*. at ¶ 63. They also rely on a translated Amsterdam Court decision regarding a dispute between Freedom

Registry B.V. and one of its investors, Kima Ventures SAS, in which the Amsterdam Court found "the soundness of [Freedom Registry B.V.'s] administration to be questionable" and ordered an investigation into the conduct of Freedom Registry B.V. and its affairs. SAC ¶¶ 65-78; Ex. 16. They further allege that shortly after the Amsterdam Court decision, Mr. Zuurbier incorporated JZMS, which replaced Cervesia as the director of Fintag Group, and contend that this "restructuring" following the Amsterdam Court's findings, show that "several of Defendants act as a single enterprise and as alter egos of each other through an intricate web of offshore shell companies." *Id.* at ¶¶ 76, 78. These allegations are insufficient to state any plausible claims as to Fintag Group, Yoursafe, Cervesia, or JZMS.

Plaintiffs have failed to even specify which of the other Defendants they contend to be Fintag Group, Yoursafe, Cervesia, or JZMS's alter egos, let alone sufficient facts to demonstrate that another Defendant controls their internal affairs or daily operations. Nor do they allege how these Defendants operate as a single enterprise, or that an injustice would result if the alleged bad acts were treated as belonging only to one of the Defendants. *See Tran v. Farmers Grp., Inc.*, 104 Cal. App. 4th 1202, 1219 (2002) (single enterprise liability requires (1) such a unity of interest and ownership such the companies form a single enterprise; and (2) an inequitable result if the acts in question are treated as those of one corporation alone). The Amsterdam Court case related only to the administration of Freedom Registry B.V., not to any other Defendant. Moreover, that case pertained to an investor dispute, not any examination of alter ego status. Plaintiffs' allegations regarding the timing of Cervesia's replacement as director with JZMS are not indicative of any wrongdoing, either. As to Fintag Group, Yoursafe, Cervesia, and JZMS, Plaintiffs' alter ego allegations consist of formulaic labels and conclusions.

Finally, to the extent Plaintiffs allege that Fintag Group, Yoursafe, Cervesia, and JZMS are liable under a theory of direct participation, the SAC fails to allege sufficient facts to plausibly establish that any these Defendants directly participated in any of the tortious activities that gave rise to Plaintiffs' lawsuit. *See Gajo v. Chicago Brand*, Case No. 17-cv-00380-EMC, 2017 WL 2473142, at *4 (N.D. Cal. June 8, 2017) (trademark infringement can stem from either alter ego liability or direct participation in the tort). The SAC contains no allegations that Fintag Group,

Yoursafe, Cervesia, or JZMS either directed any other Defendant to commit cybersquatting or trademark infringement, or that they themselves personally committed those acts. *See id.*

Accordingly, Plaintiffs have failed to state plausible claims against Fintag Group, Yoursafe, Cervesia, or JZMS.

## V.   CONCLUSION

For the foregoing reasons, the SAC should be dismissed as to Foreign Defendants.

DATED: September 25, 2023                                   **ROME LLP**

By: */s/ Eugene Rome*
        Eugene Rome
        Sridavi Ganesan
        Brianna Dahlberg

        Attorneys for Defendants,
        OPENTLD B.V., FREEDOM
        REGISTRY B.V., FINTAG GROUP B.V.,
        CERVESIA ACIDA BV, B.V. DOT TK,
        CENTRAFRIQUE TLD B.V.,
        EQUATORIAL GUINEA DOMAINS
        B.V., MALI DILI B.V., GABON TLD
        B.V., STICHTING OPENTLD WHOIS
        PROXY, YOURSAFE B.V., JOOST
        ZUURBIER MANAGEMENT
        SERVICES B.V., and VTL MERCHANT
        SUPPORT, INC.